UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

Civil Action No. 13-137-HRW

ANDY LEE LYON,                                                                                                   PLAINTIFF,

v.                       **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for supplemental security income benefits on March 22, 2010, alleging disability beginning on October 30, 2009, due to degenerative disc disease, heart problems, depression and arthritis (Tr. 200). This application was denied initially and on reconsideration (Tr. 1-4, 5-8). On March 27, 2012, an administrative hearing was conducted by Administrative Law Judge Maria Hodges (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Dwight McMillion, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-

step sequential analysis in order to determine whether the Plaintiff was disabled:

> Step 1: If the claimant is performing substantial gainful work, he is not disabled.
>
> Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).
>
> Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.
>
> Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.
>
> Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

On May 9, 2012, the ALJ issued his decision finding that Plaintiff was not disabled (Tr. 22-25). Plaintiff was 49 years old at the time of the hearing decision. He has a high school education with a history of special education classes and prior employment as a taxicab driver.

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application for benefits, March 22, 2010 (Tr.14).

The ALJ then determined, at Step 2, that Plaintiff suffers from degenerative disc disease, depression, high blood pressure and possible carpal tunnel syndrome, which he found to be "severe" within the meaning of the Regulations (Tr. 14-18).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 18-19).

The ALJ further found that Plaintiff could not return to his past relevant work (Tr. 23) but determined that he has the residual functional capacity ("RFC") to perform a range of light work, with certain restrictions as set forth in the hearing decision (Tr. 19).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 22-23).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner.

Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 14 and 15] and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility."

*Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ did not properly weigh the competing opinions of non-treating sources, Phil Pack, M.S. and Jan Jacobson, Ph.D., (2) the ALJ improperly relied upon a single decision maker and (3) that the hypothetical posed to the VE did not accurately portray Plaintiff's impairments.

### C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ did not properly weigh the competing opinions of non-treating sources, Phil Pack, M.S. and Jan Jacobson, Ph.D. Specifically, Plaintiff argues that the ALJ erred by giving more weight to the opinion of Dr. Jacobson, a state agency psychological consultative, than to the opinion of Mr. Pack, a one-time consultative examiner.

As neither opinion is from a treating source, no special deference is presumed. Rather, the weight afforded to an opinion from a non-treating source depends upon the factors set forth in 20 C.F.R. § 416. 927 ( c):

> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical

4

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(I) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(I) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

5

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 416. 927 ( c).

Mr. Pack examined Plaintiff in January 2012 and opined, in relevant part, that Plaintiff had a poor ability to deal with the public, deal with work stress, relate in social situations, and demonstrate reliability (Tr. 353-54). He found that Plaintiff had good or fair abilities in all other areas, which is consistent with the RFC finding (Tr. 19, 22). Dr. Jacobson reviewed the record in June 2010 and opined Plaintiff could understand and remember simple instructions, sustain attention for simple tasks for two-hour segments, tolerate occasional contact with the public, and adapt to changes (Tr. 296).

The ALJ noted that the opinions are in conflict (Tr. 22). Pursuant to the Regulations, the ALJ reviewed Mr. Pack's records pertaining to the clinical interview and the tests results for internal inconsistencies. She concluded that his opinion was not consistent with his findings. On examination, Plaintiff's speech was clear, he maintained eye contact, and he easily

established rapport (Tr. 349). His cognitive and memory functions were intact as he could remember three objects immediately, spell a 5-letter word forward and backwards, and complete basic multiplication (Tr. 349). Mr. Pack estimated Plaintiff had borderline to above average intelligence (Tr. 349). His mood was pleasant, although he became saddened when talking about past events and reported episodes of depression (Tr. 349, 351). His associations were intact, his thought process was clear and formed, and his judgment and insight were fair (Tr. 349). On the mini mental status exam, Plaintiff received a score in the normal range, indicating no significant cognitive dysfunction (Tr. 350). These findings present a very different picture of Plaintiff than what is presented in the opinion. As such, the ALJ gave Mr. Pack's report lesser weight. The Court finds no error in this regard.

As for Doctor Jacobson's opinion, the ALJ found it consistent with his findings, the evidence in the record as well as backed by his additional years of study (Tr. 22). Again, this is consistent with the factors set forth in 20 C.F.R. § 416. 927 ( c) and provide substantial evidence for the ALJ's decision.

Moreover, the ALJ did not rely on the opinion of the state agency consultant exclusively, but discussed the record as a whole in formulating the RFC, including the medical evidence submitted subsequent to the assessments (Tr. 18-24).

Plaintiff's second claim of error is that the ALJ improperly relied upon a single decision maker ("SDM"). However, nowhere in the decision does the ALJ state he relied on the opinion of the SDM nor does he assign any weight to that opinion. Plaintiff merely infers that the ALJ relied on the opinion because the RFC is identical to the SDM opinion and there are no other medical opinions in the file. However, review of the record shows that the ALJ reviewed the

medical evidence as a whole in reaching his determination. Furthermore, the ALJ was bound by the prior ALJ decision absent new and material evidence of changed circumstances. The ALJ determined that Plaintiff failed to establish changed conditions regarding his physical impairments and, therefore, adopted the prior RFC finding in this regards, not the SDM's opinion (Tr. 22). Plaintiff does not challenge the ALJ's determination that she was bound by the prior RFC finding about Plaintiff's physical limitations. Accordingly, Plaintiff cannot show that the RFC finding was erroneous.

Finally, Plaintiff contends that the hypothetical posed to the VE did not accurately portray Plaintiff's impairments.

First, Plaintiff maintains that the ALJ's Plaintiff argues that the ALJ's finding of a marginal education was inconsistent with the hypothetical presented to the VE. At the hearing, Plaintiff testified that he completed a twelfth-grade education, but he was in special education for all classes (Tr. 39). The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work history when responding to the hypothetical question (Tr. 58). In response, the VE testified that Plaintiff would be able to perform the jobs of machine tender, marker, bench worker, and inspector (Tr. 59). Even assuming the VE did not equate a special education with marginal education, any error was harmless. Marginal education means a claimant has the reasoning, arithmetic, and language skills necessary to do simple, unskilled types of jobs. *See* 20 C.F.R. § 416.964(b)(2). The ALJ's hypothetical question limited Plaintiff to performing simple, routine, repetitive tasks involving one to two step instructions (Tr. 58). Thus, the VE's response provides substantial evidence that the jobs identified could be performed with a marginal education. Also, Plaintiff has not shown that he is unable to perform the jobs identified by the

VE. Unskilled work, which requires only a marginal education, corresponds to a special vocational preparation (SVP) of 1-2. Soc. Sec. Ruling (SSR) 00-4p, 2000 WL 1898704. Here, the types of jobs identified by the VE have an SVP of 1-2.

Plaintiff also argues that the hypothetical was incomplete because it did not include all the limitations from Jan Jacobson, Ph.D., Ed Ross, Ph.D., or Phil Pack, M.S. However, the hypothetical question need not mirror the opinion of a doctor. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Rather, it must represent a complete and accurate summation of the claimant's abilities and overall mental and physical state based on the evidence. First, as discussed herein, substantial evidence supports the ALJ's decision to give no weight to Dr. Pack's opinion. Therefore, the ALJ was not required to include in the hypothetical question the limitations assessed by Dr. Pack. With regards to the opinions of Dr. Ross and Dr. Jacobson, Plaintiff's reliance upon *Ealy* in crying foul is misplaced. In *Ealy*, the ALJ relied on a hypothetical that did not include speed- and pace-based restrictions that the ALJ found claimant to have. *See Ealy*, 594 F.3d at 516. By contrast, in this case, the ALJ adequately accounted for the mental limitations opined by the consultants. Dr. Ross adopted the prior ALJ's rational, which limited Plaintiff to performing simple tasks involving one to two step instructions (Tr. 73, 270). Dr. Jacobson opined that, despite Plaintiff's moderate limitations in concentration, persistence, and pace, Plaintiff could understand and remember simple instructions, sustain attention for simple tasks for extended periods of two hours, tolerate coworkers and supervisors in a setting with only occasional public contact, and adapt to changes as needed (Tr. 296). The ALJ accounted for these opinions in the hypothetical by asking limiting Plaintiff to simple tasks involving one or two-step instructions and occasional interaction with the public (Tr. 19, 58-59).

The ALJ, therefore, properly relied on the VE's testimony to find that Plaintiff could perform other work.

The Court finds that it accurately portrayed the claimant's abilities and limitations, as required by *Varley v. Secretary of Health and Human Services*, 820 F.2d 777 (6th Cir. 1987) and its progeny. This rule is necessarily tempered by the requirement that the ALJ incorporate only those limitations which he or she finds to be credible. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 19th day of March, 2015.



Signed By:
*Henry R. Wilhoit, Jr.*
**United States District Judge**

Henry R. Wilhoit, Jr., Senior Judge